Ronald J. DADE, Plaintiff–Appellant,

v.

SHERWIN–WILLIAMS COMPANY, Defendant–Appellee.

No. 96–4169.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1997.

Decided Nov. 3, 1997.

---

Lawrence P. Washington (argued), Chicago, IL, for Plaintiff–Appellant.

Robert T. Zielinski, William D. Serritella (argued), William J. Wortel, Ross & Hardies, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Ronald J. Dade ("Dade") sued his employer, Sherwin–Williams Company, pursuant to the Employee Retirement Income Security Act ("ERISA"), because Sherwin–Williams terminated certain medical benefits for Dade's wife Theresa Ann Dade ("Theresa"). The district court granted summary judgment in favor of Sherwin–Williams, largely because Dade failed to respond to Sherwin–Williams' statement of uncontested facts filed under Local Rule 12. Because Dade failed to respond, the rule required the district court to accept as true the facts stated by Sherwin–Williams. The district court granted summary judgment because Sherwin–Williams claimed to have paid Dade all benefits due under the policy, and to have given Dade all the notice due under the law. We must now affirm.

## I.

Dade was an employee of Sherwin–Williams who received coverage for himself and his dependents under Sherwin–Williams' Health Benefits Plan (the "Plan"). In 1984, Theresa developed a cancerous brain tumor which rendered her seriously disabled. She later suffered further injuries in a car accident, and became completely bedridden. The Plan paid a licensed practical nurse to care for Theresa sixteen hours a day, seven days a week from the time of the car accident in 1986 until January 14, 1994. During that time, however, the parties disputed the extent of coverage to be provided to Theresa, arguing primarily over whether the care she received was skilled nursing care, which was covered under the Plan at varying levels throughout the relevant period, or custodial care, which was never covered by the Plan during the relevant time period.

From 1987 through 1992, the Plan covered all skilled nursing care provided for the treatment of illness or injury. Beginning in 1993, the Plan limited coverage for skilled nursing care to four hours per visit within a 24–hour period, for a maximum of 50 visits per year. Although the definition of skilled nursing care changed slightly over time, the Plan essentially defined skilled nursing care as services performed by a licensed nurse to assure the safety of the patient and to achieve the medically desired result. The Plan covered only services that were ordered by a physician as part of a homebound patient's plan of treatment, and only services that were an appropriate level of care for the treatment of the injury or illness. The definition of custodial care also changed over time, but was essentially defined by the Plan as care which primarily assists the covered person in meeting the activities of daily living, which was not primarily skilled nursing care rendered on a continuous basis, which could be rendered other than by a graduate registered nurse or practical nurse, and which was not medically required. From 1993 through 1995, custodial care was defined as services or supplies that are "primarily for the purpose of meeting personal needs such as, but not limited to: help in walking, bathing, dressing, eating, prevention of bed sores, patient positioning, preparation of special diets, and supervision or administration of medication which can usually be self-administered and which does not entail or require continuous attention or monitoring by trained medical or paramedical personnel."

The Plan also provided that in disputed cases, the Plan administrator, here Provident Life and Accident Insurance Company ("Provident"), reserved the right to make a final determination about whether services constituted skilled nursing care or custodial care. The Plan also provided during the relevant time period that Sherwin–Williams, as the Plan sponsor, reserved the right to "terminate, suspend, withdraw, amend or modify the Plan, covering any active Employee or current or future retiree, in whole or in part at any time." From 1991 through 1995, the Plan provided that Provident had "final discretionary authority to determine eligibility for benefits or to construe the terms of the Plan for claims purposes only." Also, beginning in 1992 and continuing through 1995, the Plan established a case management services program. The purpose of this program

was to allow a case manager to determine whether a plan of medical treatment was appropriate in cases where the covered person suffered a severe injury or illness. HealthCare COMPARE Corporation ("HCCC") administered this program from 1993 through 1995. Dade received notices of changes in coverage through summary plan descriptions ("SPD"). Sherwin–Williams periodically distributed the SPDs to all of its employees between 1987 and 1995, and these SPDs are identical to the written instrument that established the Plan. According to Sherwin–Williams, Dade received SPDs that described all of the provisions of the Plan that are at issue here.

In 1987, Provident notified Dade that it had reviewed notes from Theresa's private duty nurse and information from her doctor and determined that she was receiving custodial care rather than skilled nursing care. On that basis, Provident stated that the Plan would no longer cover the cost of the private duty nurse. Dade appealed this decision, and Provident reinstated coverage for nursing care, retroactive to the date the coverage had been terminated. In 1992, Provident again suspended payment of benefits, and again reinstated benefits retroactively after Dade challenged the decision. In August 1993, HCCC left Dade a voice mail telling him that it was terminating coverage for Theresa's licensed practical nurse as of June 1993. HCCC then sent a letter explaining that the services provided by the nurse were custodial in nature rather than skilled nursing, and that the services could be provided by a family member or any responsible adult. Accordingly, HCCC recommended an alternative plan of nursing care allowing three visits by a registered nurse over the following month, and then monthly skilled nursing visits thereafter.

Dade again appealed the decision, and HCCC replied that it had completed its review and reaffirmed its decision not to certify skilled nursing care for Theresa at the level at which it had been provided. Provident concurred with this judgment, but paid Dade for the care that had been provided through the date that he had first received notice of the termination of benefits. Sherwin–

Williams then voluntarily undertook its own review of the Dades' claim for nursing care coverage and agreed to pay all claims through January 14, 1994, but not past that date. After that point, Provident paid only in accordance with its determination that Theresa required only one visit per month from a skilled nurse. Theresa died on November 21, 1995.

In his complaint, Dade contended that Sherwin–Williams repeatedly attempted to terminate coverage without explaining its decision or notifying him of his right to appeal, in violation of ERISA. He also contended that Sherwin–Williams failed to notify him of any changes in the Plan, and refused to provide him with a copy of the on-site review that Sherwin–Williams used as a basis for terminating Theresa's nursing services. The district court noted that it was difficult to discern exactly what claims Dade sought to bring under ERISA. Although Dade cited several sections of the ERISA statute, including 29 U.S.C. §§ 1024(b)(4), 1102(b)(3), 1104, and 1140, some of his claims appeared to arise from other parts of the statute. The parties filed cross-motions for summary judgment. Because Dade failed to file a Local Rule 12(m) statement with his motion, the court denied the motion. Dade also failed to file a Rule 12(n) statement in response to Sherwin–Williams' Rule 12(m) statement, and the district court considered that failure a binding admission of those facts as presented by Sherwin–Williams. The district court also ruled that by failing to file a Rule 12(n) statement, Dade lost his ability to bring additional facts before the court.

The district court construed the complaint as alleging three main violations of ERISA. First, the court analyzed a claim under section 1102(b)(3), which provides that every employee benefit plan shall "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." Dade complained that he had been trying to get a copy of the plan since 1993 in order to determine if the amendment to the plan that limited skilled nursing care was approved by a person who had authority to make amendments. Because the Plan reserved to Sherwin–Williams

the ability to modify the terms of the Plan, the court held that the requirements of section 1102(b)(3) were satisfied. Thus, there was no genuine issue of material fact, and the court granted judgment on this claim in favor of Sherwin–Williams.

The court next considered whether Sherwin–Williams failed to comply with the notice requirements of ERISA under 29 U.S.C. § 1133. The court found that the statute, as interpreted by the courts, required only that the plan administrator substantially comply by supplying a statement of reasons for a denial of coverage and by explaining how to apply for review or appeal of the decision. The court found that Sherwin–Williams met these requirements with HCCC's letter to Theresa on August 19, 1993, and with Provident's letter of January 14, 1994.

In considering Dade's claim for wrongful termination of benefits, the court first considered what standard of review would be applied. Because the Plan gave discretion to the administrator to determine questions of eligibility, the court applied an arbitrary and capricious standard. Finding that Dade failed to submit any evidence showing the termination of Dade's benefits was arbitrary and capricious, the court granted judgment in favor of Sherwin–Williams. The court summarily ruled that for any remaining claims, Dade failed to refer to specific ERISA provisions and failed to provide any "properly admitted evidence" in support of his allegations. Thus, there were no genuine issues of material fact, and Sherwin–Williams' motion for summary judgment was granted.

## II.

Dade now appeals the court's entry of summary judgment in favor of Sherwin–Williams. He argues that the court should not have precluded him from presenting additional evidence merely because he failed to file a Rule 12(n) statement, and that sanctioning him in this way violates Federal Rule of Appellate Procedure 47(b). He also contends that Sherwin–Williams was not entitled to summary judgment because it failed to allege that it ever issued to Dade the notice

required by ERISA, depriving him of a reasonable opportunity to appeal Sherwin–Williams' decision. Summary judgment was also inappropriate, he argues, because Sherwin–Williams failed to provide him with documents he requested in accordance with 29 U.S.C. § 1132(c). Dade further contends that Sherwin–Williams failed to provide him with proper notice of its decision to deny benefits as of January 14, 1994 due to an amendment of the Plan. Finally, Dade claims that if we find in his favor on these issues, the appropriate remedy is damages, and that his claims should not be remanded to Sherwin–Williams for determination.[1]

## A.

Local Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois requires a party moving for summary judgment to file a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Each statement is to be supported by references to affidavits, parts of the record, or other supporting materials. Local Rule 12(n) provides a corresponding requirement for the non-moving party to respond to each statement made by the moving party, noting any disagreement and referring to the record in support of any disagreement. Material facts set out by the moving party "will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 12(n)(3)(b). The non-moving party must also supply a statement of any additional facts that require denial of summary judgment, and correspondingly, any material facts set forth by the non-moving party will be deemed admitted unless controverted by the statement of the moving party. We have upheld strict compliance with Local Rule 12 on numerous occasions. *See e.g., Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 938 (7th Cir.1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 256 (1993); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519

---

1. Because we find that summary judgment was properly entered in favor of Sherwin–Williams, we do not address the issue of what remedy, if any, would be appropriate.

(7th Cir.1992); *Maksym v. Loesch,* 937 F.2d 1237, 1240–41 (7th Cir.1991).

■ Dade concedes that because of his failure to file a Rule 12(n) statement, we must accept as true Sherwin–Williams' version of the facts as presented in its Rule 12(m) statement, to the extent those facts are properly supported by references to the record. But Dade contends that he should not be prevented from presenting additional facts that preclude entry of summary judgment merely because he failed to file a Rule 12(n) statement. He argues that precluding him from presenting additional facts violates Federal Rule of Appellate Procedure 47(b), which provides for the procedure when there is no controlling law:

> A court of appeals may regulate practice in a particular case in any manner consistent with federal law, these rules, and local rules of the circuit. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

This is an odd argument indeed. First, Dade is asking us, on the basis of a rule applying to courts of appeals, to find that the district court erred.

■ Second, even if this rule applied to district courts, and we find it does not, Dade has completely misconstrued the rule. The rule states that a court cannot sanction a party for noncompliance with a requirement when that requirement does not appear in federal law, federal rules or local circuit rules. But the requirement to state any additional facts that compel denial of summary judgment is clearly set out in Local Rule 12(n)(3)(b): "Each party opposing a motion filed pursuant to F.R. Civ. P. 56 shall serve and file . . . a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary

judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Moreover, we have previously upheld this sanction for failing to comply with the Local Rule. *See e.g., Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316–17 (7th Cir.1995) (refusing to consider additional facts not set forth in a Rule 12(n) statement is within a district court's discretion in interpreting its own local rules); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994) (upholding similar sanction for noncompliance with similar local rule in Southern District of Indiana).[2] The district court did not err by refusing to consider additional facts when Dade failed to file a Rule 12(n) statement of additional facts. We will, therefore, take as true the facts alleged in Sherwin–Williams' Rule 12(m) statement, to the extent they are supported by references to the record. Because we find that the district court was within its discretion to refuse to consider additional facts submitted by Dade, we too will not consider any additional facts.

### B.

■ We review *de novo* the district court's grant of summary judgment in favor of Sherwin–Williams. *Green v. Shalala,* 51 F.3d 96, 99 (7th Cir.1995). Dade complains that Sherwin–Williams failed to provide him with written notice of its reasons for denying benefits, and that failure deprived him of an opportunity for full and fair review by the administrator of the Plan. Although Dade does not cite the appropriate section of ERISA in his complaint, the district court construed this as a claim pursuant to 29 U.S.C. § 1133. That section requires the plan to provide adequate notice in writing to the plan participant whose claim for benefits has been denied. The notice must be written in a manner calculated to be understood by the participant and the plan must provide the participant with a reasonable opportunity for a full and fair review of the denial by a

---

2. Dade's contention that his failure to file a Rule 12(n) statement was "due to inadvertence and his own negligence but not because he failed to appreciate the need for the requirement" does not advance his cause. *See* Reply Brief of Plaintiff-Appellant, at 2. As far as we can tell from the record, Dade failed to move under Federal Rule of Civil Procedure 60(b) for relief from the judgment due to his inadvertence or excusable neglect. *See Robb v. Norfolk & Western Railway Co.,* 122 F.3d 354, 355 (7th Cir.1997).

fiduciary of the decision denying the claim. *See* 29 U.S.C. § 1133; *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688–89 (7th Cir.1992). The federal regulations that elaborate on this requirement provide that an initial notice of denial of a claim should include specific reasons for the denial, specific reference to the plan provisions on which the denial is based, a description of any additional material or information needed to perfect the claim, and information about the steps to be taken if the participant wishes to submit the claim for review. 29 C.F.R. § 2560.503-1(f). Although the regulations are specific in pronouncing the requirements, substantial compliance with these requirements is sufficient. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 180 (7th Cir.1994); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir.1994) (not all procedural defects will upset a fiduciary's decision because substantial compliance with the regulations is sufficient); *Halpin*, 962 F.2d at 690 (same).

The district court found that the requirements were met in HCCC's August 19, 1993 letter to Theresa and in Provident's January 14, 1994 letter. Dade argues that Sherwin–Williams' April 6, 1994 letter reversed the earlier finding that Theresa was not entitled to skilled nursing care but reduced her benefits to 200 hours annually due to an alleged amendment of the Plan. That letter, Dade argues, denied benefits and did not meet the requirements of ERISA regulations. Dade also maintains that he received no letter informing him of the termination of benefits effective January 14, 1994.[3] Sherwin–Williams contends that the August 19, 1993 letter was the letter denying benefits and that all correspondence after that was an outgrowth of the appeals process begun in October with a letter from Dade's lawyer to HCCC. Rather than a new denial of benefits, that letter, according to Sherwin–Williams, was meant only to inform Dade that Sherwin–Williams had decided to pay for care rendered prior to January 14, 1994 even though it was in excess of the benefits provided by the Plan, to inform Dade that nursing care thereafter would be paid in accordance with the limits of the Plan, and to inform Dade that Sherwin–Williams was removing the once per month limit on home nursing visits that had been imposed by the claims fiduciary.

The August 19, 1993 letter from HCCC informed the Dades that under the medical necessity provisions of the Plan, Theresa was not eligible for nursing care sixteen hours per day, seven days per week. HCCC explained that although Theresa had significant care needs, the necessary care did not require skilled staff and could be provided by a family member or other responsible adult. Thus, Theresa would be provided with three skilled nursing visits over the next month and then one visit per month thereafter. The letter informed the Dades that if Theresa's physician recommended continuing the nursing care sixteen hours per day, seven days per week, HCCC would obtain whatever medical information was necessary to review her case at that time. The Dades were provided with a copy of an appeal form explaining the appeals process, and were provided with telephone numbers to call if they had questions either about the letter or about benefit coverage generally.

The January 14, 1994 letter from Provident explained that the Appeal Committee had completed its review, and essentially affirmed the earlier decision to limit skilled nursing benefits. Provident stated that the previous level of skilled care had been provided as an alternative medical treatment which could be discontinued for a number of reasons. At its discretion, the Plan administrator could authorize another alternative treatment plan, and Provident concurred with HCCC's recommendation for limited skilled nursing services. The letter set forth

---

**3.** We reject Dade's contention that Sherwin–Williams denied benefits effective January 14, 1994. The correspondence submitted by Sherwin–Williams establishes on its face that the January 14, 1994 letter was intended to finally resolve Dade's requests for review of Sherwin–Williams' earlier decision. That Sherwin–Williams voluntarily undertook additional review and paid additional benefits for equitable reasons in its April 6, 1994 letter does not change the date of the initial denial of benefits. Dade has submitted no evidence supporting his theory that the January 14, 1994 letter constituted a new denial of benefits. Thus, there is no genuine issue of material fact as to this issue.

the Plan provisions relating to skilled nursing care and custodial care, and explained Provident's discretion in determining whether skilled nursing care was needed. Provident then informed the Dades that it would pay for skilled nursing care through August 19, 1993 because that was the date on which the Dades were notified of the decision to terminate coverage for those services.

The April 6, 1994 letter from Sherwin–Williams responded to the Dades' continuing requests for review, even after exhaustion of the ERISA-required review process. Sherwin–Williams acknowledged in this letter that, although it believed that the Plan had been properly applied, the application of the Plan may have appeared inconsistent to the Dades. For equitable reasons, Sherwin–Williams therefore decided to pay for Theresa's skilled nursing services through January 14, 1994. Sherwin–Williams also certified Theresa to receive the full amount of skilled nursing care available under the then-amended Plan, rather than be limited per the recommendation of HCCC and Provident. Finally, the letter also addressed the Dades' claims that they had not received the notice due to them under ERISA and that the Plan had been improperly amended.

■ We agree with Dade that the August 19, 1993 letter did not strictly comply with ERISA regulations, but we agree with the district court that the August 19, 1993 letter, in combination with the January 14; 1994 letter, substantially complied. "In determining whether there has been substantial compliance, the purpose of 29 U.S.C. § 1133 and its implementing regulations, 29 C.F.R. § 2560.503–1(f), serves as our guide: 'was the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.'" *Donato*, 19 F.3d at 382 (citing *Halpin*, 962 F.2d at 690). Together, the letters stated specific reasons for the denial of benefits, namely that the care Theresa was receiving could be supplied by a family member or other responsible adult, and did not require a skilled nurse. Further, the letters referenced the medical necessity provision of the Plan, as well as the skilled care and custodial care provisions, which were the specific plan provisions on which the denial was based. The August 19, 1993 letter stated that if Theresa's physician recommended continuing her skilled nursing care, that HCCC would obtain the medical information needed to perform the review. The January 14, 1994 letter referenced the medical records reviewed, including billing records and nursing notes. Finally, an appeal form was enclosed with the August 19, 1993 letter, detailing the steps necessary to request review of the denial. We find that there was no genuine issue of material fact regarding whether these letters provided "a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Donato*, 19 F.3d at 382.

## C.

Dade's next claim is that, despite "continuous" requests, Sherwin–Williams failed to provide him with a copy of the on-site medical review of his wife that was used to terminate her benefits, and also failed to provide him with a copy of the Plan. The second claim is belied by Sherwin–Williams' Rule 12(m) statement, which provides that Dade periodically received Summary Plan Descriptions ("SPDs"), which were the documents that established and modified the Plan. This statement is supported by references to the record, and in particular to Dade's deposition where he admitted receiving the SPDs and also admitted understanding that they contained the terms of the Plan and modifications to the Plan. In the absence of any contrary evidence, we accept Sherwin–Williams' statement as true. The only remaining claim, then, is that Sherwin–Williams failed to provide Dade with a copy of the medical review of his wife that formed the basis for the termination of skilled nursing benefits.

Again Dade failed to cite the appropriate section of ERISA in his complaint to raise this claim, but we will assume he intended to raise a claim under sections 1132(c) and 1133. Section 1132(c) provides that:

[a]ny administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. *See* 29 U.S.C. § 1132(c). Dade points to no provision which requires the administrator to furnish this information. Presumably, the requirement arises from 29 U.S.C. § 1133 and its accompanying regulations. That section requires that each plan provide participants with a reasonable opportunity for full and fair review of the decision denying the claim. An accompanying regulation, in turn, provides that the plan must establish a review procedure, and that the review procedure must include a provision that allows a claimant to "[r]eview pertinent documents." *See* 29 C.F.R. § 2560.503–1(g)(1)(ii).

██ However, the civil penalties of 29 U.S.C. § 1132(c) do not apply as a matter of law in these circumstances. Section 1132(c) imposes fines against an *administrator*, and thus cannot be used to redress a violation of section 1133, which imposes a duty on the *plan*. *See Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 405 (7th Cir.1996). *Wilczynski* addresses this issue exhaustively, and we will not repeat that analysis here. We find *Wilczynski* controlling on the issue of liability for failure to provide the on-site review. Dade advances no other theory for holding Sherwin–Williams liable for the failure to provide a copy of the on-site review, and thus summary judgment in favor of Sherwin–Williams was properly entered on this claim.

### D.

We also find that there is no genuine issue of material fact regarding whether Sherwin–

Williams improperly amended the Plan, to the extent that Dade's complaint can be construed to make such a claim. Dade now argues that he was entitled to a full and fair review of the denial of nursing benefits so that he could determine if there had been a bona fide amendment to the Plan, and whether the person who made the amendment was authorized to do so. We have scoured Dade's complaint looking for a claim that the Plan was improperly amended and found no such claim. The complaint referenced the amendment only twice. First, Dade alleged that Sherwin–Williams sent him a letter on April 6, 1994 informing him that it amended the Plan to cover skilled nursing care for a maximum of 200 hours per year. Second, in his prayer for relief, Dade requested that the court enter an order compelling Sherwin–Williams to pay for Theresa's medical care at the rate it was being paid prior to the amendment. Neither reference hints of a claim of improper amendment.

 Furthermore, a claim that a Plan sponsor amended its plan to deprive a claimant of health benefits is not a cognizable complaint under ERISA. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 77, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995). The only cognizable claim is that Sherwin–Williams did not amend the Plan in a permissible manner. *Id.* The Plan provided that Sherwin–Williams reserved the right to "terminate, suspend, withdraw, amend or modify the Plan, covering any active Employee or current or future retiree, in whole or in part at any time." Under *Curtiss–Wright*, that reservation of authority is sufficient to establish a procedure for amending the Plan. *Id.*, 514 U.S. at 77–83, 115 S.Ct. at 1228–31. Without any allegation that Sherwin–Williams failed to follow this procedure, there is no genuine issue regarding whether Sherwin–Williams properly modified the Plan. Thus, summary judgment was appropriate on that claim.

### E.

 To the extent Dade's complaint states a claim for wrongful termination of benefits, we find that summary judgment

was properly entered on this claim as well. Other than making conclusory statements that the denial of benefits violated ERISA and failed to adhere to Sherwin–Williams' Plan, Dade offers no information regarding how the denial violated ERISA or the Plan. Sherwin–Williams, however, explains in its Rule 12(m) statement that it denied the benefits based on its belief that Theresa was receiving custodial rather than skilled nursing care, and later denied benefits due to the new limits of the Plan. Sherwin–Williams' claim that its decision was not arbitrary and capricious but rather based on a medical review of Theresa's condition has gone unchallenged by Dade, and we must accept it as true. Because the Plan gives discretion to the Plan administrator to determine whether services supplied constitute skilled or custodial care, and also reserves to the administrator final discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the administrator's decision under the arbitrary and capricious standard. *See Cuddington v. Northern Indiana Public Service Co.*, 33 F.3d 813, 816 (7th Cir.1994); *Donato*, 19 F.3d at 378–80. Because Sherwin–Williams has stated a legitimate reason for its decision to deny benefits and because Dade has offered no evidence to the contrary, there is no genuine issue of material fact regarding the wrongful termination of benefits claim. Sherwin–Williams is entitled to summary judgment on the claim.

**F.**

Although Dade referenced 29 U.S.C. §§ 1104 and 1140 in his complaint, he alleged no facts giving rise to claims under these sections. Further, he appears to have abandoned any theory relating to these sections in the court below and on appeal. The district court found that without any supporting factual allegations or evidence from Dade, there was no genuine issue of material fact regarding these possible claims. We agree that it was appropriate for the district court to enter summary judgment in favor of Sherwin–Williams on the remaining claims.

AFFIRMED.