Linda MADDOX, Plaintiff,

v.

**BAIS YAAKOV HEBREW PAROCHIAL SCHOOL, et al., Defendants.**

No. 97 C 6437.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 25, 1999.

Linda Maddox, Albany, NY, pro se.

Jodi Eisenstadt, Sachnoff & Weaver, Chicago, IL, for Bais Yaakov Hebrew Parochial School.

Laurie E. Leader, Leader & Associates, Ltd., Northbrook, IL, for The Telemarketing Co.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant The Telemarketing Company's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) and plaintiff Linda Maddox's motion for sanctions. For the following reasons, the court grants defendant's motion for summary judgment and denies plaintiff's motion for sanctions.

## I. BACKGROUND [1]

Plaintiff Linda Maddox ("Maddox") is a Caucasian Jewish woman who worked for defendant The Telemarketing Company ("TTC") from July 17, 1996 to March 11, 1997. TTC, a telemarketing business, hired Maddox as a part-time telemarketer at its 820 Davis Street office in Evanston, Illinois. Maddox brought this suit against defendants pursuant to 42 U.S.C. § 1981 (" § 1981") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., claiming TTC discriminated against her be-cause of her color, race, religion, and sex when TTC failed to promote her and terminated her employment.

The matter is currently before the court on TTC's motion for summary judgment.[2] TTC contends that it is entitled to judgment as a matter of law because (1) Maddox has failed to establish a prima facie case of employment discrimination and (2) even if Maddox has established a prima facie case, TTC has legitimate nondiscriminatory reasons for not promoting her and for terminating her employment. The court is also reviewing Maddox's request for sanctions.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts are in three parts. Part A discusses the procedural history of this summary judgment motion. Part B discusses events that occurred with respect to Maddox's claim that TTC discriminated against her in violation of § 1981 and Title VII when TTC failed to promote her. Part C discusses events that occurred with respect to Maddox's claim that TTC discriminated against her in violation of § 1981 and Title VII when TTC terminated her employment.

### A. Procedural history

TTC filed its motion for summary judgment on October 7, 1998. In response to TTC's motion, the court ordered TTC to file a court pleading advising Maddox of the consequences of failing to respond to TTC's motion and Local General Rule 12(M) Statement ("12(M) statement"), the requirements of Local General Rule 12 ("Rule 12"), and the consequences of failing to comply with Rule 12. Order dated Oct. 15, 1998 (Docket Entry 23); (D.'s Reply at 3).

Maddox filed her response brief and 12(N) statement on November 11, 1998. On November 25, 1998, TTC filed its motion to strike Maddox's 12(N) statement for failure to comply with Rule 12(N). In response to

1. Unless otherwise indicated, the following facts are taken from the parties' Local General Rule 12(M) and 12(N) Statements. See infra Part II.A (addressing the impact of Maddox's failure to comply with Local General Rule 12 on the court's determination of the undisputed facts).

2. On May 7, 1998, this court dismissed defendant Joan Dachs Bais Yaakov Elementary School, Yeshivas Tiferes Tzvi, incorrectly named as Bais Yaakov Hebrew Parochial School with prejudice.

TTC's motion to strike, the court set a hearing for December 1, 1998. On December 1, 1998, Maddox requested that the hearing be rescheduled. The court continued the hearing to January 7, 1999. On January 7, 1999, Maddox did not come to the hearing and the court granted TTC's motion to strike plaintiff's 12(N) statement. Thereafter, on January 22, 1999, Maddox filed a second 12(N) statement.

### B. Events relating to TTC's failure to promote Maddox

In late December of 1996 or early January of 1997, Maddox applied for a promotion to the position of Quality Assurance Processor. The Quality Assurance Processor is a full time position in TTC's office located at 3925 North Neenah in Chicago, Illinois.

Quality Assurance Processor Georgiann Mimler ("Mimler"), a Caucasian, interviewed Maddox along with ten to fifteen other candidates for the position. Mimler selected Joshua Nachman, a Caucasian, from the pool of candidates to fill the position because his qualifications were superior to Maddox's: (1) he had broader computer experience and (2) he had quality assurance experience which Maddox lacked.

### C. Events relating to Maddox's termination of employment

On August 9, 1996, Schundra Hubbard ("Hubbard"), as part of her supervisory duties, issued a verbal warning to Maddox for absenteeism. Hubbard then documented this warning on a Personnel Planner's Report Form ("PPR"). This PPR notes that between July 22, 1996 and August 14, 1996, Maddox failed to meet her scheduled hours and was absent from work eight times.

On February 12, 1997, Hubbard issued a written warning to Maddox regarding her absenteeism. As a result of this written warning, TTC placed Maddox on probation.

Between the verbal and the written warnings, TTC confronted Maddox about her unprofessional behavior. Specifically, on November 25, 1996, Operations Manager Paul Ruszel ("Ruszel") observed Maddox making personal phone calls on TTC's business phones without authorization and contrary to TTC's policy. When Ruszel reminded Maddox of TTC's policy, Maddox became loud and belligerent. Ruszel was unable to calm Maddox, so he told her to go home and to avoid such outbursts in the future. Despite Ruszel's recommendation, Maddox continued to have outbursts and difficulties interacting with other employees.

Maddox also disrupted TTC's operations by alleging to the Evanston Police Department ("the Department") that unidentified TTC employees stalked her, stole her money and papers, and trespassed in her apartment. The Department contacted Hubbard on two occasions regarding Maddox's complaints.

Finally, on March 11, 1997, Maddox, in front of a client, created another disturbance at the office. After this event, Hubbard recommended to Ruszel that Maddox be terminated. On that same day, TTC terminated Maddox for disorderly conduct.

## II. DISCUSSION

### A. Local General Rule 12

Before addressing the merits of TTC's motion, the court must address Maddox's failure to comply with Rule 12. Rule 12(M) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." LOCAL GEN. R. 12(M). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 12(N) then requires the opposing party to file among other items:

> a concise response to the movant's statement that shall contain: (a) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the records, and other supporting materials relied upon, and (b) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affi-

davits, parts of the record, and other supporting materials.

LOCAL GEN. R. 12(N)(3). Rule 12(N) further provides that "all material facts set forth in the statement of the moving party will be deemed admitted unless controverted by the statement of the opposing party." *Id.* The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.*, 122 F.3d 374, 382 (7th Cir. 1997).

In this case, TTC filed a proper Rule 12(M) Statement. However, Maddox has failed to file a proper Rule 12(N) Statement. Because Maddox is proceeding pro se, this court has provided Maddox with ample opportunity to comply with Rule 12(N). The court instructed TTC to inform Maddox of the requirements of Rule 12(N) and the consequences of failing to comply with Rule 12(N). *See* Order dated Oct. 15, 1998 (Docket Entry 23); (D.'s Reply at 3). Maddox, nevertheless, failed to comply with Rule 12(N) on two occasions. In Maddox's first 12(N) statement, she (1) failed to provide "a response to each numbered paragraph" of TTC's 12(M) statement, LOCAL GEN. R. 12(N)(3), (2) failed to provide "specific references to the affidavits, parts of the records, and other supporting materials" upon which she relied in those instances in which she "objected" to TTC's 12(M) statement, *id.*, and (3) improperly included her legal arguments with her factual statements. These deficiencies were pointed out in TTC's reply memorandum and motion to strike plaintiff's 12(N) statement.

▪ After the court granted TTC's motion to strike plaintiff's 12(N) statement, Maddox submitted a second 12(N) statement. In this 12(N) statement, Maddox again put forth legal arguments and, in all but one paragraph, she again failed to provide a cite to the record or any other supporting materials in the instances she disputed TTC's 12(M) statement. Only in paragraph 5 of her 12(N) statement, did Maddox refer to any supporting materials to dispute TTC's allegations in paragraph 8 of its 12(M) statement. Thus, except for the statement in paragraph 8, to the extent the facts contained in TTC's 12(M) statement are supported by the record, they

are deemed admitted as they are uncontested. *See Dade v. Sherwin–Williams Co.*, 128 F.3d 1135, 1140 (7th Cir.1997). However, because Maddox is pro se, the court will consider evidence in her favor when the court happens to come across any. The court will not, however, scour the record to find evidence in support of Maddox's arguments.

## B. Standard for deciding a motion for summary judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Smith v. Severn*, 129 F.3d 419, 425 (7th Cir.1997).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

## C. Employment discrimination

▪ Maddox's claim against TTC is for employment discrimination under both § 1981 and Title VII. Section 1981 "addresses racial discrimination in contractual relationships." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.1996). Title VII makes it "an unlawful employment practice

for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion," or sex. 42 U.S.C. § 2000e–2(a)(1). Claims under § 1981 and Title VII are analyzed in the same manner. *Bratton v. Roadway Package Sys., Inc.,* 77 F.3d 168, 176 (7th Cir.1996). Accordingly, Maddox's employment discrimination claims under § 1981 and Title VII will be analyzed together.

■ Discrimination may be established in either of two ways—through direct evidence or through the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686 (7th Cir.1991). Maddox offers no direct evidence that race, color, religion, or sex played a role in TTC's decisions not to promote her and to terminate her employment. Thus, her claims will be analyzed under the burden-shifting method enunciated in *McDonnell Douglas.*

■ Under *McDonnell Douglas,* the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case, Maddox must show: (1) that she belongs to a protected group; (2) that she performed satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that similarly-situated employees outside the classification received more favorable treatment. *Hughes v. Brown,* 20 F.3d 745, 746 (7th Cir.1994). If the plaintiff establishes a prima facie case, then "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision." *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 931 (7th Cir.1996). If an employer meets its burden, then the plaintiff must show, by a preponderance of the evidence, that the employer's

stated reason for dismissal is nothing more than pretext. *Id.* Pretext means a lie. *Id.* There are three ways to show that the proffered nondiscriminatory explanation is pretextual: (1) the employer's explanation had no basis in fact; (2) the explanation was not the "real" reason; or (3) the explanation was insufficient to warrant the adverse employment action. *Id.*

Maddox's claims of employment discrimination are based on TTC's failure to promote her and decision to terminate her employment. Maddox is Jewish and a female, thus she is a member of a protected class.[3] Accordingly the first element of her prima facie case is not in dispute. Furthermore, element three of the prima facie case is also met. Neither party disputes that Maddox was subject to an adverse employment action— TTC's failure to promote her and TTC's decision to terminate her employment.

■ TTC, however, does contend that Maddox has failed to establish both element two and element four of the prima facie case. A plaintiff can establish the second element of the prima facie case through her own testimony that her performance was satisfactory. *Weihaupt v. American Med. Ass'n,* 874 F.2d 419, 428 (7th Cir.1989). Maddox contends in her response brief that "she most certainly was doing her job well enough to meet TTC's expectations." (Pl.'s Resp. ¶ 23(2)). However, Maddox does not cite any support for this contention and TTC's 12(M) statement contains no facts which support this contention. To the contrary, TTC's 12(M) statement contains uncontested facts about Maddox's absenteeism and unprofessional behavior. Thus, Maddox has not met her burden of establishing a prima facie case of employment discrimination because Maddox has failed to establish that she performed satisfactorily.[4]

Furthermore, even if the court did find that Maddox had established her prima facie case, TTC has offered legitimate, nondiscrim-

---

3. Maddox also claims she was one of a few Caucasians in a nearly all African–American office. However, after a search of the exhibits attached to TTC's 12(M) statement, the court has found no facts which substantiate this claim.

4. Thus, the court will not address the fourth element because Maddox, by not establishing satisfactory performance, has failed to meet her burden of establishing a prima facie case.

inatory reasons for not promoting Maddox and eventually terminating Maddox's employment. With respect to her failure to promote claim, TTC contends that it failed to promote Maddox because there was a better qualified candidate. Maddox has not shown that TTC's proffered reason for not promoting her was not the actual reason and that it was only pretextual. Maddox actually agrees with TTC's contention that it did not discriminate against her when it failed to promote her. (Pl.'s Resp. ¶ 9). With respect to her wrongful termination claim, TTC contends that it terminated Maddox's employment because of her repeated absenteeism and unprofessional conduct. Maddox has again failed to show that TTC's proffered reason for her dismissal was not the actual reason and that it was only a pretext for discrimination. Maddox claims in her response brief that TTC's nondiscriminatory reasons are "totally false" and TTC took no disciplinary actions before her termination. (Pl.'s Resp. ¶¶ 27–28). However, once again Maddox provides no factual support for these contentions and TTC's 12(M) statement also does not provide any factual support for Maddox's contentions. Again, to the contrary, TTC's 12(M) statement supports TTC's claim. (D.'s 12(M) Statement ¶¶ 15, 17–22, 24). Thus, none of Maddox's arguments show that TTC's proffered reason for not promoting her and for terminating her employment was a lie.

In sum, Maddox has failed to establish that she was performing satisfactorily. Because Maddox cannot establish the requisite element of satisfactory performance, she has failed to establish a prima facie case of employment discrimination. Moreover, even if Maddox had established a prima facie case, she failed to show that TTC's proffered reason was pretextual or a lie. Accordingly, TTC is entitled to judgment in its favor on Maddox's employment discrimination claims.

### D. *Maddox's request for Rule 11 sanctions*

Maddox requests the court to impose sanctions against TTC. However, Maddox has provided the court with no legal basis for the sanctions. Thus, the court will examine Maddox's request for sanctions under Rule 11, Federal Rule of Civil Procedure 37(b) ("Rule 37(b)"), and the court's inherent power.

Rule 11(c) states: "A motion for sanctions under this rule shall ... describe the specific conduct alleged to violate subdivision (b)." FED. R. CIV. P. 11(c). Subdivision (b) involves representations made to the court. FED. R. CIV. P. 11(b). Maddox first argues that counsel for TTC failed to provide (1) a protective order for confidential documents and (2) any notification of receipt of medical records. However, since these first two arguments are not based on representations made by TTC to the court, Maddox's request for court imposed sanctions does not meet the requirements of Rule 11(c). Maddox's final argument for sanctions is that TTC attached a fraudulent affidavit signed by Ruszel to its 12(M) statement. However, Maddox has provided no support for this contention. Furthermore, the court did not rely upon Ruszel's statement on the number of employees assigned to the telemarketing group. Thus, the court does not find that Maddox's unsupported statement, that Ruszel's affidavit is fraudulent, warrants the imposition of sanctions on TTC. Accordingly, the court denies Maddox's motion for sanctions pursuant to Rule 11.

Rule 37(b) permits the court to impose sanctions on parties who fail to comply with discovery orders. FED. R. CIV. P. 37(b). In this case, Maddox's allegations did not occur during court ordered discovery, thus the court will not impose sanctions under Rule 37(b).

Finally, the federal courts have the inherent power to "fashion ... appropriate sanction[s] for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). In appropriate cases, "this power would even permit a court to impose the ultimate sanction of a grant of judgment (or its equivalent, dismissal with prejudice)." *Diettrich v. Northwest Airlines, Inc.,* 168 F.3d 961, 962 (7th Cir.1999). However, this inherent power must be exercised with restraint and discretion. *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123. In this case, no

medical records were ever presented to the court and the court did not rely upon Ruszel's statement regarding the number of employees. Thus, no harm has come to Maddox through (1) TTC's failure to provide a protective order; (2) TTC's failure to provide Maddox with notification of receipt of her medical records; and (3) Ruszel's allegedly fraudulent statement. Accordingly, the court will not grant Maddox's motion for sanctions pursuant to the court's inherent power.

In sum, Maddox has failed to provide the court with any basis and the court fails to find any basis to impose sanctions on TTC. Thus, the court denies Maddox's motion for sanctions.

### III.  *CONCLUSION*

For the foregoing reasons, the court (1) grants TTC's motion for summary judgment and (2) denies Maddox's motion for sanctions. Final judgment in this case is entered in favor of defendant the Telemarketing Company and against plaintiff Linda Maddox.