Joseph PAYNE, Plaintiff–Appellant,

v.

MILWAUKEE   COUNTY,   Milwaukee County Personnel Review Board, and Jeffrey M. Jentzen, M.D., Defendants–Appellees.

No. 97–2260.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1998.

Decided May 14, 1998.

Robert E. Sutton, Milwaukee, WI, Lorraine McGraw (argued), Milwaukee, WI, for Plaintiff–Appellant.

Mary Ellen Poulos (argued), Office of the Corporation Counsel, Milwaukee, WI, for Defendants–Appellees.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Joseph Payne, a former employee of the Milwaukee County Medical Examiner's Office, sued Milwaukee County (the County) alleging retaliatory discharge and race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Payne also brought suit against Milwaukee County, the Milwaukee County Personnel Review Board, and Dr. Jeffrey Jentzen (the defendants) for violating his First Amendment right to speak freely on matters of public concern. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Payne's case was tried to a jury. After closing arguments, the district court granted judgment as a matter of law to the defendants pursuant to Federal Rule of Civil Procedure 50(a).

## I. BACKGROUND

Payne was employed as a forensic investigator by Milwaukee County in the Medical Examiner's Office between February 27, 1984, and October 2, 1990, at which time he was suspended without pay while the Milwaukee County Personnel Review Board (the Board) considered charges filed against him. Prior to his suspension, in April 1990, Payne filed a complaint with the Milwaukee County Equal Rights and Affirmative Action Division alleging that a work evaluation by his supervisor, Dr. Jentzen, was unfairly altered due to his race. During July 1990, Payne wrote letters to several of his elected representatives, including a United States congressman, Wisconsin's governor, two United States senators, a Milwaukee County supervisor, and the Milwaukee County Executive. In his letters, which were all substantially the same, Payne challenged the policies and procedures of the Medical Examiner's Office. Payne claimed that there was discrimination at the office based on race, ethnicity, and gender. A typical passage from one of Payne's letters reads:

> Despite the Medical Examiner's cleverness in hiding cover-ups, misuse of the Power granted to the Office, political manipulation, paranoia, EXPERIMENTATION, intimidation, deception and retaliation, the truth will some day surface. Some things

are already surfacing, as lies never die or disappear.

On July 31, 1990, Payne filed a formal charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In October 1990, Dr. Jentzen filed charges with the Board against Payne based on the letters Payne had sent to his elected representatives. The specific charge stated that Payne made false and malicious statements in writing concerning the Medical Examiner and the policies and procedures of the office, which threatened the confidence of the public in the Medical Examiner's Office. During the pendency of this charge and while still on suspension, Payne applied for a supervisory position, but did not receive an interview. Milwaukee County formally discharged Payne on September 4, 1991, after the Milwaukee County Personnel Review Board held a hearing and concluded that Payne's letters were false and malicious.

## II. ANALYSIS

We review *de novo* the grant of judgment as a matter of law (directed verdict) under Federal Rule of Civil Procedure 50(a). *Perry v. Harris Chernin, Inc.,* 126 F.3d 1010, 1013 (7th Cir.1997). We review the evidence in a light most favorable to the non-moving party to determine whether there was no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party. *Id.*; *American Nat'l Bank & Trust Co. v. Regional Transit Auth.,* 125 F.3d 420, 431 (7th Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

### A. FIRST AMENDMENT CLAIM

Payne maintains that the district court erred in directing a verdict on his First Amendment claim. He argues that the court usurped the province of the jury both by determining that Dr. Jentzen's testimony at trial was more credible than other witnesses'

and by finding that the allegations in Payne's letters were false. In determining whether Payne's assertions in the letters to his elected representatives was protected speech, the district court stated:

> [I]n looking at the total and sum and substance of this record, we find that the real testimony regarding the procedures in the office and what goes on in the office is that—that has to be accepted by the Court—is that of Dr. Jentzen. Dr. Jentzen's credentials are established to the point where you—could be categorized as an expert in clinical and forensic—and there is another category of pathology. And his opinions relative to the procedures [of the Medical Examiner's Office] are ones which Dr. Jentzen has established as medically necessary for a complete and thorough autopsy.

> . . . . .

> So that when the Court looks at the tenor and tone and the text of this letter, it can only agree that the statements in there are false.

(Trial Tr. at 371–72).

■ The district court did not follow the proper standard for rendering judgment as a matter of law. "When a case turns on credibility, neither side is entitled to judgment as a matter of law unless objective evidence shows that it would be unreasonable to believe a critical witness for one side." *Kasper v. Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1173 (7th Cir.1998). Here, it was improper for the district court to give credit to Dr. Jentzen's testimony over that of other witnesses because objective evidence did not show that it would be unreasonable to believe either Payne or other plaintiff's witnesses. The district court also made inferences from the facts when finding that Payne's letter was false. Such a finding is a function of the jury. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14. Indeed, the defendants concede that the district court made factual findings: "The District Court Judge pursuant to Rule 50 F.R.C.P., after hearing all of the testimony made an independent finding that the statements contained in this letter were false and malicious and dismissed the plaintiff's claim that his First Amendment

right to speak freely on matters of public concern were violated." (Appellee's Br. at 5). Because the district court made credibility determinations and a factual finding, judgment as a matter of law was improper. Therefore, we reverse and remand Payne's First Amendment claim for a new trial.

## B. TITLE VII CLAIMS

Payne asserts that his September 1991 discharge from the Milwaukee County Medical Examiner's Office was in retaliation for the allegations of discrimination in the letters sent to his elected officials. Payne, who is African–American, also contends that the County's failure to promote him, his lowered work evaluation, and his subsequent discharge were all based on his race.

■ Under the now familiar *McDonnell Douglas* indirect method of proof, Payne attempted to establish a prima facie case for his race discrimination and retaliation claims. *Essex v. United Parcel Serv., Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). Although a *prima facie* case for each of these claims is different, the shifting burdens of production set forth in *McDonnell Douglas* apply to both. *Id.* If the plaintiff establishes a prima facie case, there is a rebuttable presumption of discrimination and the employer must offer a legitimate, nondiscriminatory or non-retaliatory reason for the adverse employment action. *Id.* at 1308–09. If the employer gives a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff must prove this reason is mere pretext for discrimination. *Id.* at 1309.

### 1. Retaliation

■ Payne contends that his discharge was retaliatory due to the allegations of discrimination in his letters to his elected officials. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir.1998). In order to establish a prima facie case of retaliation under the *McDonnell Douglas* frame-

work, Payne must establish that: (1) he participated in a protected activity under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.*

Payne asserts that "but for" the letters to his elected officials, he would not have been fired, suggesting that this establishes the necessary causal nexus. Although Payne misconstrued the nature of the activities protected under a Title VII claim of retaliation, Payne's EEOC complaint is a protected activity under element one. *See id.* Nonetheless, Payne has not provided evidence that would suggest, let alone establish, a nexus between his discharge and the filing of the EEOC complaint. Moreover, the time lapse from when the EEOC complaint was filed and Payne's discharge was over thirteen months, which alone is not a close enough temporal link to infer a causal nexus. *See Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 480 (7th Cir.1995). Payne's subjective belief that his discharge was retaliatory under Title VII does not overcome his burden of establishing his *prima facie* case. *See id.* We, therefore, affirm the district court's judgment as to Payne's Title VII retaliation claim.

### 2. Race Discrimination

Payne also maintains that he was discharged due to his race. Payne must establish the following elements by a preponderance of the evidence in order to show a *prima facie* case of racial discrimination: (1) he was in a protected class; (2) he was performing his job satisfactorily; (3) an adverse employment action occurred; and (4) those outside of the protected class were treated more favorably. *Gonzalez,* 133 F.3d at 1032. On appeal, Payne does not argue that employees outside of a protected class were treated more favorably than he. The County, however, contends that Dr. Jentzen treated employees equally, yet fails to establish a situation in which other employees were discharged. Nevertheless, the burden is on Payne to establish a *prima facie* case by a preponderance of the evidence, which he has not done.

In his amended complaint, Payne alleges that his February 1990 lowered work evaluation, indicating a decline in his performance, was based on his race. Payne fails to directly argue this claim on appeal. On the other hand, the County asserts that it has provided non-discriminatory, legitimate reasons for Payne's lowered evaluation. However, we do not reach the question of an employer's reasoning for an adverse employment action until there is a rebuttable presumption of discrimination, that is, after the employee establishes a *prima facie* case of discrimination. *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir.1997).

Payne also maintains that the County's failure to promote him to the position of field investigator supervisor was based on his race. In order to demonstrate that he was not promoted due to his race, Payne must establish that: (1) he was a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee promoted was not more qualified than he. *Brill v. Lante Corp.,* 119 F.3d 1266, 1270 (7th Cir.1997). At trial, the County presented evidence that one of the qualifications required for field investigator supervisors was former supervisory experience. Of the applicants who applied for the field investigator supervisor, only two had prior supervisory experience, including the employee who was hired. Because Payne did not have supervisory experience, he was considered unqualified. Thus, Payne did not establish that he was qualified for the job or that the employee promoted was not more qualified than he—the second and fourth elements of a *prima facie* case. Therefore, the district court did not err in entering judgment as a matter of law for the defendants.

### III. CONCLUSION

After a *de novo* review of the district court's judgment as a matter of law and an examination of the evidence in a light most favorable to Payne, we conclude that there was no legally sufficient evidentiary basis for a reasonable jury to find for Payne on his Title VII claims and therefore affirm the district court's directed verdict on Payne's

Title VII action. The district court erred, however, in making both a factual finding and a credibility determination when it directed a verdict against Payne on his First Amendment claim; we therefore reverse and remand the district court's judgment on that matter.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR A NEW TRIAL.