**Alvando DEAN, Sr., Plaintiff–Appellant,**

v.

**CHICAGO TRANSIT AUTHORITY, Defendant–Appellee.**

No. 04–2608.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 2, 2004.

Decided Jan. 5, 2005.

Armand L. Andry, Oak Park, IL, for Plaintiff–Appellant.

Ellen L. Partridge, Chicago Transit Authority Law Department, Chicago, IL, for Defendant–Appellee.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

ORDER

Alvando Dean, Sr., sued the Chicago Transit Authority ("CTA") in the Northern District of Illinois, alleging age and disability discrimination. The CTA moved for summary judgment. Dean failed to file a timely response to the motion, and the district court denied him leave to file an untimely response. As a consequence, under Local Rule 56.1 of the Northern District of Illinois, Dean admitted that he had not suffered an adverse employment action. The district court therefore granted summary judgment. Dean appeals, and we affirm.

I.

Alvando Dean drove buses for the CTA. In June 1999, he reportedly experienced disabling injuries in a bus accident while on duty. Dean brought a worker's compensation claim and secured a cash settlement from the CTA.[1] Additionally, in light of his claims of total disability, the CTA transferred Dean into a temporary non-working status known as Area 605. Pursuant to the collective bargaining agreement between the CTA and Dean's union, Area 605 permits disabled employees to maintain seniority rights and employment benefits (e.g., health insurance) even though they are not working or earning a salary from the CTA.

---

1. The settlement covered this accident-related claim and a prior worker's compensation claim involving allegations of emotional distress.

Generally, employees may remain in Area 605 for twenty-four months. Dean, however, stayed in Area 605 more than twenty-seven months: September 16, 1999 to December 31, 2001. When Area 605 eligibility expires, an employee faces several options, including returning to full-time employment or retiring. On the advice of his attorney, Dean elected the retirement option and executed the appropriate documents on November 28, 2001. Dean retired on January 1, 2002, several weeks shy of his sixty-sixth birthday.

Separately, during this period, the CTA terminated one of its health insurance options for employees. The terminated plan was the Humana HMO, which was the plan Dean had selected for himself and his wife. The termination date for the Humana plan was December 31, 2001, and all CTA employees in that plan had to select a new plan by December 14, 2001. Dean, like many other CTA employees and retirees, failed to do so. Thus, in January 2002, the CTA was in the process of placing Dean and other non-responders into the CTA's default option, the Blue Cross and Blue Shield PPO, with an effective start date of January 1, 2002.

In mid-January 2002, Dean filed paperwork with the CTA to select a different Blue Cross plan covering Medicare participants. As a result, the CTA enrolled Dean in this Blue Cross plan as of January 1, 2002. However, Dean did not complete the paperwork for his wife's coverage at that time. The resulting confusion surrounding his wife's coverage was not ironed out until April 2002. At that juncture, however, the CTA not only enrolled Dean's wife in the Blue Cross plan but made her coverage retroactive to January 1, 2002. The retroactive coverage required Dean to pay back premiums to January 1, 2002. The result was continuous coverage for him and his wife, and, although Blue Cross originally denied some claims, Blue Cross ultimately made corrections and paid all the medical expenses at issue by October 2002.

Unsatisfied (and perhaps a bit confused about how everything transpired), Dean sued the CTA on January 8, 2003, alleging age and disability discrimination under the Age Discrimination in Employment Act and the Americans with Disabilities Act, respectively.[2] Dean claimed that the CTA discriminated and retaliated against him by forcing him to retire and by terminating his health insurance benefits. According to his complaint, due to the supposedly forced retirement, he was "left without medical insurance coverage." Further, when Dean asked why he was no longer insured, a CTA official, according to the complaint, told Dean: "We don't need old people like you." Additionally, according to the complaint, Dean allegedly "saw documents on a[CTA] computer screen indicating that he was not to receive insurance because of his having made complaints."[3]

---

2. Dean filed an EEOC charge on October 8, 2002, and the EEOC issued Dean a right-to-sue letter on October 15, 2002.

3. Dean's retaliation claim is murky. Dean supposedly saw these digital documents, according to the complaint, after he filed his EEOC charge in October 2002, which was well after the effective start date, January 1, 2002, of his and his wife's Blue Cross coverage. However, in his appellate brief, Dean indicates that he actually saw these digital documents on November 28, 2001, when he filled out his retirement forms. Thus, to give a semblance of logic to his retaliation story, Dean's appellate brief informs us that he lodged some sort of EEOC charge in December 2000. Little is known about this prior charge other than it appears to be independent from the discrimination claims raised in this action. His appellate brief also bolsters the retaliation claim by reporting that, in September 2001, a different CTA official said that "Mr. Dean files too many complaints and lawsuits." Finally, we note that the text of Dean's 2002 EEOC charge did not allude to

In managing Dean's case, the district court set the dispositive motion deadline for January 23, 2004, and the corresponding response deadline for February 6, 2004—two weeks after the motion deadline. The CTA filed a summary judgment motion on January 23, which was a Friday. Along with its motion, the CTA filed a memorandum of law, exhibits, and, as required by Local Rule 56.1(a)(3), a statement of material facts as to which it contended there was no genuine issue.

On the following Monday, January 26, 2004, the CTA moved to amend some of its summary judgment filings. In the proposed amendments, the CTA corrected typographical errors and minor omissions in its memorandum of law and its Rule 56.1(a)(3) statement, as well as in one of its supporting affidavits. Dean did not oppose the amendments in writing or at a hearing on the motion held on January 29, 2004. In fact, Dean's attorney did not appear at the January 29 hearing.[4] The district court granted the motion at that hearing and filed the amended documents that day. The district court did not, *sua sponte*, extend the February 6 response deadline.

The February 6 deadline then came and went. Dean did not file a response opposing summary judgment or contesting the CTA's Rule 56.1(a)(3) statement. Also, Dean did not move for or otherwise request additional time to file a response before the February 6 deadline had elapsed. Then, on February 19, 2004—nearly two weeks after the February 6 deadline had passed and exactly three weeks after the CTA's amended documents were filed—Dean filed a "motion for leave to file response to motion for summary judgment instanter."[5] The district court held a hearing on Dean's motion on February 24, 2004. In the motion and at the hearing, the only reason offered by Dean for not filing a timely response or a timely request for an extension of time was that his attorney,[6] a sole practitioner, was busy attending to other court cases. On February 9 and 10, 2004, his attorney had to appear in state court. On February 12, 2004, his attorney had to attend a conference with this court's settlement conference office. Lastly, from February 11 to 16, 2004, his attorney had to prepare a brief for this court in a different case. According to the hearing transcript, Dean's attorney thus informed the district court: "So the first time that I could actually complete all the attention that I needed to finalize this was to get this prepared for filing by February 19th."

The district court denied Dean leave to file an untimely response to the CTA's

his present retaliation claim; he did not even check the box on the EEOC form to indicate that he was complaining about retaliatory discrimination.

4. According to the district court's docket sheet, this was the third time Dean's attorney did not appear at a motion hearing in this case.

5. Recall that the response deadline ordered by the district court was two weeks after the motion deadline. Therefore, even if Dean had assumed that the filing of the CTA's amended documents somehow automatically extended his response deadline, the logical extension would have been two weeks from the filing of the amended documents. That date would have been February 12, 2004. Dean, however, did not act until February 19. Thus, Dean cannot blame his failure to act on the CTA's amendments. More important, this assumption is completely unfounded: in a situation such as this, a litigant cannot simply assume that a court will, *sua sponte*, extend a deadline. If Dean needed additional time, the proper course would have been to request it before the February 6 deadline passed.

6. The attorney who represented Dean before the district court (and who is representing Dean in this appeal) is not the same attorney who earlier advised Dean to retire.

summary judgment motion at the February 24 hearing. Consequently, Dean did not properly file a response to the summary judgment motion. In the absence of a properly filed response and an accompanying statement under Local Rule 56.1(b)(3) refuting the CTA's Rule 56.1(a)(3) statement, the district court ruled that Dean had admitted all the material facts in the CTA's statement. Then, on May 27, 2004, the district court granted the CTA summary judgment. Dean appeals.

## II.

On appeal, Dean argues that the district court should not have (1) denied him leave to file an untimely response, and (2) granted the CTA summary judgment. We review a district court's refusal to grant leave to file an untimely response, which is the same as denying an untimely motion for an extension of time, under the abuse-of-discretion standard. See Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1030 (7th Cir.1998). District courts "possess great authority to manage their caseload" and have the "right to expect that deadlines will be honored." Id. (internal quotation omitted). Therefore, we will not disturb a district court's denial of an untimely request for additional time unless "it is apparent [that the district court] acted unreasonably." Id. Furthermore, we review a district court's grant of summary judgment de novo, construing all facts in favor of the nonmovant. See Ammons v. Aramark Unif. Servs., Inc., 368 F.3d 809, 818 (7th Cir.2004). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

When, as here, a party fails to file a document within the amount of time ordered and then requests additional time to file the document, Fed.R.Civ.P. 6(b)(2) governs the decision on the extension request. Under this rule, an untimely extension request may be granted if "the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b)(2).

In attempting to meet the excusable-neglect standard, the sole reason offered by Dean was that his attorney had a busy schedule. An attorney's busy schedule, however, does not rise to the level of excusable neglect. See Gonzalez, 133 F.3d at 1030–31; United States v. Dumas, 94 F.3d 286, 289 (7th Cir.1996) (" 'Excusable neglect' requires something more than a simple failure to meet the deadline due to a busy schedule."); see also Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 101 (1st Cir.2003) ("[The] fact that appellant's attorney was 'preoccupied' with other matters [does] not constitute excusable neglect.... Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of matters they are handling or suffer the consequences." (internal quotation omitted)); McLaughlin v. City of La Grange, 662 F.2d 1385, 1387 (11th Cir. 1981) ("Appellants' motion for additional time to respond [to a summary judgment motion] was filed four days late. It asserts as 'excusable neglect' only that appellants' counsel is a solo practitioner and was engaged in the preparation of other cases. The fact that counsel has a busy practice does not establish 'excusable neglect' under Rule 6(b)(2)."); 1 Moore's Federal Practice § 6.06[3][c] (3d ed.1997) ("Ignorance of when a time period expires does not qualify as excusable neglect, nor does a busy schedule, lack of diligence, inadvertence, or other manifestations of carelessness and laxity."). Accordingly, the district court did not abuse its discretion in denying Dean leave to file an untimely response.

As a result, Dean did not properly file a response to the CTA's summary judgment motion. This failure to respond is fatal to Dean's action against the CTA because, by failing to respond, he made admissions, under Local Rule 56.1(b)(3)(B), that vitiate his claims of discrimination. Local Rule 56.1(a)(3) requires a summary judgment movant to file a statement of material facts about which the movant contends there is no genuine dispute. The CTA complied. Rule 56.1(b)(3) then requires the nonmovant to respond to each point in the movant's statement. To encourage compliance, the rule further mandates that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party," N.D. Ill. LR 56.1(b)(3)(B), and, "[w]e have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission," *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.2003). Further, the "district court is entitled to expect strict compliance with Rule 56.1." *Ammons*, 368 F.3d at 817. Dean failed to comply. Thus, Dean admitted all the material facts in the CTA's Rule 56.1(a)(3) statement.

Dean thus admitted that there was no lapse in his health insurance benefits. According to the CTA's Rule 56.1(a)(3) statement, Dean and his wife were covered under the old Humana plan through December 31, 2001, and were covered by the new Blue Cross plan effective January 1, 2002. The CTA, moreover, did not pull these facts out of thin air. They are consistent with the CTA's supporting exhibits, including Dean's deposition testimony. *See, e.g.*, R.13, Ex. C at 56 (Dean: "Humana covered us up until December 31 of 2001."); *id.* at 65 (Dean: "[B]ack to Janu-

ary 1, 2002 . . . . [t]hat is when the Blue Cross Blue Shield went in effect, the same day as my retirement. . . . [It] went in effect for both of us . . ."); *id.* at 228 ("[Question:] Was she added effective January 1, . . . 2002? [Dean:] Yes.").

Dean further admitted that he voluntarily retired from the CTA after consulting with his attorney. According to the CTA's Rule 56.1(a)(3) statement, the CTA did not force Dean into retirement; rather, he retired because his attorney advised him to do so. These facts are also supported by Dean's deposition testimony: Dean testified that his attorney had talked with CTA officials about Dean's situation and, when asked to give a reason for signing the retirement forms, Dean stated: "I was following the advice of [my] attorney." R.13, Ex. C at 137.

These admissions sink Dean's claims of discrimination. To survive summary judgment in a discrimination case such as this, a plaintiff must show that he suffered an adverse employment action. *See Gusewelle v. City of Wood River*, 374 F.3d 569, 574 (7th Cir.2004); *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502–03 (7th Cir. 2004). This is true whether the alleged discrimination was based on age, disability, or retaliation, and whether the plaintiff is proceeding under the direct or indirect methods of proving such claims. *See Gusewelle*, 374 F.3d at 574 (age discrimination); *Buie*, 366 F.3d at 502–03 (disability discrimination and retaliation). Dean has failed to establish an adverse employment action because he has admitted that the CTA did not terminate his health insurance coverage or force him into retirement. Therefore, given the absence of an adverse employment action in this case, the CTA is entitled to summary judgment.[7]

7. Dean's failure to include any hint of a complaint about retaliatory discrimination in the

2002 EEOC charge also precludes his retaliation claim from going forward. *See Peters v.*

## III.

An attorney's busy schedule does not amount to excusable neglect. Thus, the district court did not abuse its discretion in denying Dean leave to file an untimely response to the CTA's summary judgment motion. Dean consequently made admissions under Local Rule 56.1(b)(3)(B) showing that the CTA did not terminate Dean's health insurance coverage or force him to retire. These admissions are supported by the record and confirm that Dean did not suffer an adverse employment action. As a result, Dean cannot succeed on his discrimination claims, and the CTA is therefore entitled to summary judgment. The judgment of the district court is AFFIRMED.

*Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir.2002); *Auston v. Schubnell,* 116 F.3d 251, 254–55 (7th Cir.1997). The CTA further argues for summary judgment by contending that Dean failed to identify a similarly-situated individual who was treated more favorably than Dean. At oral argument, however, Dean argued that the similarly-situated issue is irrelevant in this case because he is only proceeding under the direct method. Because the lack of an adverse employment action adequately and completely disposes of this case, whether the case is prosecuted under the direct or indirect method, we need not sort out this dispute nor address the CTA's similarly-situated argument.