In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4059

TYRONE J. GREER,

Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF THE CITY OF CHICAGO,
ILLINOIS, a municipal corporation of the
city of Chicago, formerly known as CHICAGO SCHOOL
REFORM BOARD OF TRUSTEES,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7005--Charles P. Kocoras, Judge.

Argued APRIL 10, 2001--Decided October 3, 2001


  Before COFFEY, ROVNER and DIANE P. WOOD,
Circuit Judges.

  COFFEY, Circuit Judge. Plaintiff Tyrone Greer
is an African-American, who sued the Board of
Education of the City of Chicago ("the Board"),
alleging racial discrimination and
retaliation in violation of Title VII of
the Civil Rights Act of 1964. The
district court granted the Board's motion
for summary judgment, and Greer appeals.
We affirm.

I.  BACKGROUND

  Greer was hired as a freshman and
sophomore English teacher at South Shore
High School in 1990. Chicago's high
school principals have considerable
control over personnel matters, and in
July 1997, apparently due to
shiftingstudent enrollment patterns, the
principal of South Shore "closed" Greer's
position. This meant that Greer's
services were no longer needed at South
Shore, and that he was now subject to
reassignment anywhere within the
district.

  Greer then pursued three courses of
action. First, he filed a sex
discrimination charge with the EEOC,

alleging that the principal closed Greer's position because he is a male. Second, he filed a grievance with his union, alleging that the principal's decision was prohibited by the district's collective bargaining agreement. Third, he contacted the Board's human resources department for assistance. The department informed Greer that he would be classified as a "reassigned teacher." He would continue working as a part-time substitute teacher and would receive his full salary and benefits. However, pursuant to Board policy, he would have to actively seek appointment to another position within the district, and he would be terminated if he did not secure a permanent position within ten months.

In October 1997, officials at Collins High School gave Greer a 60-day probationary appointment, where he would teach a curriculum titled "Options-For-Knowledge." Greer applied for a permanent position at Collins shortly afterwards, and he spoke with Rosa Vazquez, who is a recruiter in the Board's personnel department. Vazquez conferred with various officials and noted that Collins had a disproportionate number of minority teachers on staff. This was a problem because, since 1980, the Chicago public schools have operated under a federal consent decree designed to achieve racial integration among students and teachers. Vazquez determined that Greer's employment at Collins would not advance the goals of the consent decree. As a result, the Board notified Greer that he could not be permanently assigned to Collins unless the school's principal, Clement Smith, submitted a waiver request to the Faculty Integration Committee for its approval.

In January 1998, the Board's director of recruitment and staffing advised Smith that he needed to apply for a waiver if he wanted Greer to obtain the full-time position. Smith never submitted the request, stating that he did not want to jeopardize the school's attempts to integrate the permanent faculty. As a result, the Board rejected Greer's application, and he stopped working at Collins in June 1998. Greer then filed a second charge with the EEOC, alleging that the Board had discriminated against him on the basis of his race and age, and, furthermore, had retaliated against

him for filing the previous sex discrimination charge.

The Board honorably terminated Greer in January 1999 because he had failed to secure permanent employment within the school district./1 Two months later, labor arbitrator Barry E. Simon found merit in Greer's grievance concerning the South Shore position. Simon disagreed with the Board's argument that he lacked jurisdiction over the grievance, and he ordered the Board to reinstate Greer. The Board continued to maintain that Illinois law prohibits the arbitration of certain disputes over classroom assignments and schedules, and, in the end, the Board refused to comply with Simon's ruling./2 Greer accepted a teaching position at another Chicago public high school in August 1999.

The district court found that Greer's EEOC charge was limited to the denial of employment at Collins High School, then proceeded to grant the Board's motion for summary judgment on Greer's Title VII and Section 1981 claims of race discrimination and retaliation./3 The court found that Greer had failed to raise an inference of discrimination and, in any event, had not rebutted the Board's proffered race-neutral reasons for its decision. The court also found no merit in Greer's claim of retaliation.

II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. Kuemmerlein v. Board of Educ. of Madison, 894 F.2d 257, 261 (7th Cir. 1990). We affirm if there is no more than some "metaphysical doubt" whether there is a genuine dispute of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Greer was not represented by counsel, and as a threshold matter, we address his repeated insinuation that the district court did not afford him the liberal construction of pleadings that is due to a pro se plaintiff. As the district court noted, the Board submitted a proposed list of 72 undisputed material facts, supported by citation to the record, along with its motion for summary judgment. For at least two reasons, Greer's response miserably failed to

comply with Local Rule 56.1,/4 which requires the non-moving party to admit or deny each factual statement proffered by the defendant and to designate with specificity and particularity those material facts believed to establish a genuine dispute for trial./5 First, Greer's ostensible rebuttal of the Board's evidence consisted only of reproducing the Board's list of undisputed facts, circling those that he contested, and stating without further discussion that "Plaintiff disagrees with the below numbered statements/paragraphs" because they were "vague," "not fully stated or explained," and "lacking other relevant information" or "simply not true." Second, although Greer offered five proposed "undisputed facts" of his own, he did not cite any evidence in support of his pleadings. Furthermore, at least two of those five submissions were generalized self-serving legal conclusions, rather than particularized statements of fact./6 Greer then used a 16-page brief as a veritable catapult to hurl a jumbled mass of information (none of which was referenced in his Rule 56.1 statement) at the Board and the district court in the hope of avoiding summary judgment./7

   Greer correctly notes that we liberally construe the pleadings of individuals who proceed pro se. "The essence of liberal construction is to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998). However, a lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are "obliged in our adversary system to scour the record looking for factual disputes. . . ." Waldridge v. American Hoechst Corp., 24 F.3d 918, 921-22 (7th Cir. 1993).

   Greer's pleadings have obfuscated the true issues at stake and have served only to further burden an already burdened judicial system and to frustrate the Board's attempts to marshal its resources in a targeted defense against his allegations. Although the district court would have been within its discretion to grant the Board's motion for summary judgment on this basis alone, it

charitably parsed the record for evidence of discrimination or retaliation. We agree with the district court's finding that no rational jury could find in Greer's favor.

## III.  DISCUSSION

We first consider Greer's claim of discrimination. This case is somewhat unusual because it involves a school dis trict's reliance upon a consent decree, which was designed to eliminate vestiges of discrimination and to promote equal opportunity for minority teachers and students, as the basis for denying an African-American a teaching position at one particular school. Nevertheless, nothing prevented Greer from obtaining work at other schools in the district, and he has not brought a collateral attack on the decree itself. Based upon the record before us, the Board seems to be administering the decree in good faith, and it is well-settled that a valid conciliation agreement and consent decree cannot form the basis of a Title VII action. See, e.g., Grann v. City of Madison, 738 F.2d 786, 794-95 (7th Cir. 1984) ("[a] state agency's order that rectifies discrimination should no more be the basis for a Title VII suit than a consent decree entered into during a Title VII suit.") Id. at 795.

We see no direct evidence of racial animus, and so we analyze Greer's claim using the McDonnell Douglas framework./8 Under this burden-shifting approach, Greer must first raise an inference of discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the teaching position at Collins; (3) he suffered an adverse employment action; and (4) the Board treated similarly-situated employees outside his class more favorably. Foster v. Arthur Andersen, 168 F.3d 1029, 1035 (7th Cir. 1998). "[W]e do not reach the question of an employer's reasoning for an adverse employment action until there is a rebuttable presumption of discrimination, that is, after the employee establishes a prima facie case of discrimination." Payne v. Milwaukee County, 146 F.3d 430, 434 (7th Cir. 1998).

To satisfy the fourth element, Greer must identify a comparator who is

similarly situated to him in all material respects. Because the Board's hiring practices are governed by the federal consent decree's faculty integration guidelines, Greer was required to show, at minimum, that the Board allowed teachers of another race to work at schools even if their presence would have contributed to a racial imbalance among that school's faculty. Greer testified that he was unaware of anybody who was allowed to teach without a waiver at a school that was not meeting the racial goals of the consent decree. He also was unaware of any white teacher who had ever obtained such a waiver. On these facts, we hold that Greer failed to demonstrate that the Board treated him differently from other similarly situated employees of another race. See Oest v. Illinois Dep't of Corr., 240 F.3d 605, 614 (7th Cir. 2001).

We also affirm the trial court's grant of summary judgment on Greer's claim that the Board retaliated by not hiring him to teach at Collins High School. The undisputed evidence demonstrated that Greer did not receive the position due to the strictures of the consent decree and the faculty integration plan. Greer asserts that Options-For-Knowledge teachers and formerly "closed" teachers are exempt from the provisions of the decree. However, the decree does not readily admit of such an interpretation, and Greer has not shown that the Board's administrators shared his views of their obligations with respect to personnel matters. Greer's argument is supported only with his subjective opinion and his reading of a pamphlet that discusses seniority issues but says nothing about the district's desegregative duties. Because a party cannot defeat summary judgment by relying on unsubstantiated assertions, we find Greer's evidence wholly unpersuasive. See Hardin v. S.C. Johnson & Sons, Inc., 167 F.3d 340, 346 (7th Cir. 1999).

Similarly, we do not believe a jury could infer retaliatory animus from the Board's repeated statements during the arbitration process that it would not reinstate Greer at South Shore High School. Greer's non-hiring at Collins occurred several months before the Board first adopted and articulated this position. As a result, we see no causal

relationship between these two events. Furthermore, to the extent that the Board's decision affected Greer's employment at South Shore, Greer does not challenge on appeal the district court's finding that a claim in this respect is beyond the scope of his EEOC charge. Therefore, we deem any such claim to be waived. Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). Greer's remaining arguments are without merit.

   The judgment of the district court is AFFIRMED.

FOOTNOTES

/1 The Board retained Greer for seventeen months while he searched for a permanent position, despite the fact that Board policy permits reassigned teachers to be terminated after only ten months.

/2 At oral argument, the Board stated that it is appealing the arbitrator's decision to a state administrative review board. The record reveals nothing more about this standoff.

/3 Greer voluntarily dismissed his claim of age discrimination.

/4 Northern District of Illinois Local Rule 56.1 has replaced former Local Rule 12.

/5 The district court made Greer fully aware of the requirements of Rule 56.1. Indeed, Greer moved to strike the Board's pleading on the grounds that it did not comply with the same. The court denied the motion.

/6 These included conclusions such as: "The Board is guilty of race discrimination in the Plaintiff's case and situation for the above captioned case," and "The Board is guilty of retaliation discrimination in the Plaintiff's case and situation for the above captioned case."

/7 Greer's appellate brief similarly failed to point us to the specific portions of the voluminous record that supposedly support his arguments.

/8 See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).